**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAWN ANKNEY and | : | Civil No. 1:24-CV-1654 |
| ANKNEY TOWING, RECOVERY & | : | |
| AUTO REPAIR SERVICE, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PARADISE TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are motions to dismiss filed by Defendants Paradise
Township, Neal Doyle, Northern York County Regional Police Department,
Jeremy J. Neidigh, Jackson Township, and Bradley R. Dunham (collectively
"Defendants"), alleging that Plaintiffs Shawn Ankney ("Ankney") and Ankney
Towing, Recovery & Auto Repair Service ("Ankney Towing") (collectively,
"Plaintiffs") have failed to state a claim upon which relief can be granted in their
amended complaint.  (Docs. 15, 17, 25.)  Plaintiffs allege procedural and
substantive due process claims based on being removed from the police
departments' tow list, equal protection claims based on removal from the tow list
as well as zoning violations, and an Americans with Disabilities Act claim based
on alleged discrimination due to Ankney's speech impediment.  (Doc. 8.)  For the
reasons that follow, the motions will be granted in part and denied in part.

1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Shawn Ankney is the sole proprietor of Ankney's Towing, Recovery & Auto Repair Service, which is a towing company located in Spring Grove, Pennsylvania. (Doc. 8, ¶¶ 1, 2.) Defendant Paradise Township is a municipality in Pennsylvania, and Defendant Neal Doyle is the Zoning Officer for Paradise Township. (*Id.* ¶¶ 3, 4.)) Defendant Northern York Regional Police Department primarily serves Paradise and Jackson Townships, and Defendant Jeremy Neidigh is an administrative lieutenant of the Police Department. (*Id.* ¶¶ 5, 6, 18.) Jackson Township is a municipality in Pennsylvania, and Bradley Dunham is the currently-elected Township Supervisor, as well as the fire chief of Nashville Volunteer Fire Company, which is a Department of Jackson Township. (*Id.* ¶¶ 7, 8.)[1]

## A. Signage

Ankney owns two neighboring parcels of land, 7498 Hillside Drive, and 7500 Hillside Drive. (*Id.* ¶¶ 24, 25.) Ankney Towing has a sign displayed in front of 7500 Hillside Drive advertising Ankney Towing. In 2012, non-party Rebound Towing displayed a sign in front of 7498 Hillside Drive advertising Rebound Towing's business. (*Id.* ¶ 23, 26.) In February 2023, another non-party, Corbin

---

[1] In their motions, Defendants state that Nashville Volunteer Fire Company was incorrectly identified as Nashville Volunteer Fire Department. (Doc. 17, p. 1.) The court will refer to this entity as Nashville Volunteer Fire Company, and additionally notes that Nashville Volunteer Fire Company is not a defendant in this action.

Towing, placed an additional sign in front of 7498 Hillside Drive advertising its towing business operating out of the property.  (*Id.* ¶ 27.)

In late February 2023, Defendant Doyle informed Ankney that 7498 Hillside Drive and 7500 Hillside Drive could not have three signs across the two properties; there must be only one sign per property.  (*Id.* ¶ 28.)  As such, at that time, Corbin Towing removed its sign.  (*Id.* ¶ 29.)  In March 2023, Rebound Towing removed its sign because it was no longer operating at 7498 Hillside Drive, and within thirty days, Corbin Towing placed another sign in front of the property.  (*Id.* ¶ 30, 31.)

On July 5, 2023, Doyle sent a "notice of violation" to Ankney citing Ankney for "expand[ing] a pre-existing nonconformity by adding an additional business." (*Id.* ¶ 33.)  On July 27, 2023, Doyle sent an additional "notice of violation" concerning the same violation.  (*Id.* ¶ 34.)  Paradise Township initiated a lawsuit on November 14, 2023, regarding these violations and demanded $12,500 to resolve the suit.  (*Id.* ¶¶ 36, 37.)  Paradise Township later withdrew this lawsuit, but on the same day it withdrew the lawsuit, Doyle sent an additional "notice of violation" for the same violation.  (*Id.* ¶¶ 38, 40.)

## B. Tow List Removal and Other Contacts with Defendants

Northern York Regional Police Department maintains a "tow list" which "gives priority to a rotating group of tow companies[ ]" that the police department contacts via York County 911 dispatch whenever the police department needs

towing services.  (*Id.* ¶ 15.)  Ankney Towing has been on the list since about 1972, when Ankney Towing began operations.  (*Id.* ¶¶ 11, 17.)  Lieutenant Neidigh allegedly maintains the tow list.  (*Id.* ¶ 19.)  On October 11, 2023, Lieutenant Neidigh emailed certain towing companies, including Ankney Towing, with a directive to provide certain information to continue being on the tow list in 2024.  (*Id.* ¶ 20.)  Ankney Towing timely provided all information, but was not included on the tow list in 2024, and was not provided an explanation for the non-inclusion.  (*Id.* ¶¶ 21, 22.)

Additionally, on November 13, 2023, Ankney Towing received a call to report to an accident in Jackson Township.  (*Id.* ¶ 42.)  Ankney directed an employee, Mr. Corbin, to report to the accident on behalf of Ankney Towing.  (*Id.* ¶¶ 44.)  Upon arrival, Defendant Bradley Dunham, present at the accident in his capacity as fire chief of Nashville Volunteer Fire Company,[2] "approached Mr. Corbin at the accident scene and began yelling in Mr. Corbin's face about Ankney not being personally present despite Mr. Corbin being an employee of Ankney Towing."  (*Id.* ¶ 47.)  Mr. Corbin called Ankney on his cellphone, and Dunham informed Ankney over the phone that Dunham "was going to 'write up' Ankney Towing for not having oil-dry on the scene.  Mr. Corbin then stated that Mr.

---

[2] Defendant Dunham had been elected as township supervisor of Jackson Township at the time of this incident, but had not yet begun his term as township supervisor.  (*Id.* ¶ 46.)

Ankney was enroute with the oil-dry." (*Id.* ¶ 48.)  A Northern York Regional police officer had to intervene, and Dunham then left the scene of the accident. (*Id.* ¶¶ 50, 51.)  Ankney Towing was not written up, nor did it ever receive a formal or informal notice of violation, however, Ankney Towing did not receive any additional calls for towing, despite accidents occurring which required towing. (*Id.* ¶¶ 52–54.)  After Ankney inquired about this situation, he was informed that Paradise Township and Jackson Township no longer wanted Ankney Towing on the tow list.  (*Id.* ¶ 55.)

York County 911 Dispatch informed Ankney that Ankney Towing would still be contacted if an individual specifically requested Ankney Towing. However, a longtime customer of Ankney Towing requested their towing services, but was informed by a Northern York Regional Police officer that Ankney Towing was no longer in business.  (*Id.* ¶ 56.)  Plaintiffs also allege that receiving one write up is not a sufficient basis for removal from the tow list because a different towing company, Lamar Express Towing, had received approximately ten formal violations before being removed from the list.  (*Id.* ¶ 47.)

Ankney alleges that he has had a speech impediment since childhood and, as a result, he has difficulty speaking clearly.  (*Id.* ¶¶ 60, 61.)  Ankney alleges that members of the Nashville Volunteer Fire Company have mocked Ankney for his

speech impediment while he was responding to accident scenes, and Dunham has observed this behavior and joined in laughing.  (*Id.* ¶¶ 62, 63.)

On an unspecified date, Paradise Township refused to process Ankney's 2024 junk yard license application, resulting in Ankney Towing being unable to perform junk yard operations in 2024.  (*Id.* ¶¶ 65, 66.)  Ankney attempted to discuss the application with Doyle when Doyle drove to the Ankney Towing property to take a picture.  However, Doyle refused to discuss it, mocked Ankney for his speech impediment, and drove away.  (*Id.* ¶ 68.)

In 2023, Ankney applied for a fire bay permit for the 7500 Hillside Drive property.  (*Id.* ¶ 72.)  At a February 23, 2024 meeting regarding this permit, Doyle repeatedly mocked Ankney for his speech impediment.  (*Id.* ¶ 73.)  Doyle issued the fire bay permit and directed Ankney to post it in the window, however, in the permit, Doyle "identified the property as 'no address on file' and issued it to 'Owner Lincoln Highway Thomasville PA'[,]" which is not where the property is located.  (*Id.* ¶¶ 74–76.)  Doyle refused to correct this error and instead mocked Ankney for his speech impediment.  (*Id.* ¶ 77.)

Finally, community members and Ankney have complained of noise from two businesses also located on Hillside Drive.  However, Paradise Township has directed noise violation letters to Ankney instead of the other businesses.  (*Id.* ¶¶ 78, 79.)

## C. Claims in the Amended Complaint

Plaintiffs filed the amended complaint on October 7, 2024, raising six constitutional violations under § 1983 as well as one ADA violation. (*Id.* ¶¶ 80–124.) Count I raises procedural and substantive due process violations against all defendants regarding the tow list. (*Id.* ¶¶ 80–87.) Count II raises *Monell* claims against Paradise Township, Jackson Township and Northern York Regional Police Department for the conduct complained of in Count I. (*Id.* ¶¶ 88–94.) In their briefs in opposition to the instant motions, Plaintiffs ask the court to dismiss counts I and II. The court specifically notes that Plaintiffs request dismissal of these counts despite the court's order requiring good faith efforts to meet and confer regarding curing deficiencies in the amended complaint by amendment and moving Defendants' certifications that the parties had met, and Plaintiffs were unwilling to amend their complaint. (*See* Doc. 4; Doc. 15, ¶ 1; Doc. 17, ¶ 15.) Despite Plaintiffs failure to comply with court orders, the court will grant the motion to dismiss counts I and II with prejudice.[3]

Plaintiffs also allege an equal protection clause violation regarding the tow list against all defendants in count III. (Doc. 8, ¶¶ 95–100.) Plaintiffs allege that they were treated differently than other similarly situated towing companies, such

---

[3] In a separate order resolving the motions, Plaintiffs shall be required to show cause why sanctions should not be imposed for failure to comply with the court's order.

as Lamar Express Towing, there was no rational basis for this different treatment, and the differential treatment was due to Doyle's and Dunham's "disdain" for Ankney's speech impediment.  (*Id.* ¶¶ 97–99.)  Count IV is a *Monell* claim for the same conduct underlying count III against Defendants Paradise Township, Jackson Township, and Northern York Regional Police Department.  (*Id.* ¶¶ 101–07.)  Count V is a violation of the Americans with Disabilities Act against all defendants.  (*Id.* ¶¶ 108–112.)  Again, in their briefs in opposition, Plaintiffs request the court dismiss the ADA claim as to Doyle, Neidigh, and Dunham in their individual and official capacities.  As above, the court will dismiss the ADA claim as to these defendants with prejudice.  The remaining ADA claims allege that Paradise Township, Jackson Township, and Northern York Regional Police Department prohibited Ankney's inclusion on the tow list due to Ankney's speech impediment.  (*Id.* ¶ 111.)

Finally, Count VI raises an equal protection clause challenge against Paradise Township and Doyle regarding the signage issue.  (*Id.* ¶¶ 113–18.)  Count VI alleges that Paradise Township and Doyle treated Ankney's Towing differently from other similarly situated businesses, this differential treatment was without any rational basis, and was due to Doyle's "disdain" for Ankney's speech impediment.  (*Id.* ¶¶ 115–18.)  Count VII alleges a *Monell* claim for the same conduct against Paradise Township.  (*Id.* ¶¶ 119–24.)

In summary, the following claims remain pending and are before the court for review: counts III and IV, equal protection clause violation regarding the tow list against all defendants and companion *Monell* claim; count V, ADA claim against only the municipality defendants;[4] and counts VI and VII, equal protection clause violation regarding the signage against Paradise Township and Doyle and companion *Monell* claim.

On October 21, 2024, Defendants Jackson Township and Bradley Dunham, in his individual capacity and as Township Supervisor, filed a motion to dismiss the amended complaint for failure to state a claim.  (Doc. 15.)[5]  On the same day, Defendants Northern York County Regional Police Department, Jackson Township, Bradley Dunham in his capacity as Township Supervisor of Jackson Township and as Fire Chief for Nashville Volunteer Fire Company,[6] Paradise Township, and Neal Doyle filed a motion to dismiss for failure to state a claim. (Doc. 17.)  Plaintiffs filed briefs in opposition and memoranda of law on

---

[4] That is, Paradise Township, Jackson Township, and Northern York Regional Police Department.

[5] Document 15 and the accompanying brief raise only an argument regarding whether Defendant Dunham was acting as a state actor on behalf of Jackson Township during the November 13, 2023 incident.  (Doc. 16, p. 4.)  Because all defendants have moved to dismiss in some capacity, the court will address all motions at the same time and discuss Defendant Dunham's argument regarding whether he was a state actor in its larger discussion of all of the motions.  For ease of reference, the court will refer collectively to all defendants as "Defendants."

[6] The opening paragraph of Doc. 17 appears to list Nashville Fire Company as a defendant. (Doc. 17, p. 1.)  As previously noted, Nashville Fire Company is not a defendant to this action and is pleaded as a "department" of Jackson Township.  (Doc. 8, ¶ 7.)

November 4, 2024.  (Docs. 19, 20, 21, 22.)  Defendant Neidigh was not served

until December 30, 2024.  (Doc. 23.)  Defendant Neidigh then filed a motion to

dismiss and brief in support on January 21, 2025, which joined the arguments

raised by Defendants in their October motion, Doc. 16.  (Docs. 25, 26.)  Plaintiffs

then filed a brief in opposition on February 24, 2024.  (Doc. 27.)  No reply briefs

were filed.  Accordingly, these motions are ripe and ready for disposition.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343 because Plaintiffs allege violations of constitutional rights under 42 U.S.C.

§ 1983.  Venue is appropriate pursuant to 28 U.S.C. § 1391 because all parties are

located within the Middle District of Pennsylvania and all acts or omissions

alleged in the amended complaint occurred within the Middle District.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other*

*grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION[7]

The court will begin with the equal protection violation claims regarding the

tow list and companion *Monell* claim, then turn to Dunham's motion in his

individual capacity regarding his participation in those violations.  The court will

then examine the ADA claim, and finally turn to the equal protection violation

claims regarding signage on Plaintiffs' property and the companion *Monell* claim.

### A. Count II–Equal Protection Claim Regarding the Tow List

Defendants argue that Plaintiffs failed to sufficiently allege a "class of one"

equal protection claim because Plaintiffs failed to plead facts showing that Lamar

Express Towing is similar to Ankney Towing in all relevant aspects.  (Doc. 18, pp.

---

[7] The court has omitted arguments that are now moot because Plaintiffs conceded dismissal of counts I, II, and V against the individual defendants.

11) (citing *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)).[8] Defendants additionally argue that Ankney's assertion that removal from the tow list was due to Ankney's speech impediment is not supported by facts. (*Id.*)

Addressing arguments raised in Defendants' motion but not in their brief, Plaintiffs first respond that an equal protection claim does not require a constitutionally protected property interest. (Doc. 20, p. 6.) Plaintiffs also argue they have sufficiently pleaded a similarly situated business, and that they do not need to plead Defendants' motivation for treating Ankney different than others, but rather, Plaintiffs need only show the difference in treatment was not rational. (*Id.* at 7, 8.) Finally, again addressing an argument contained only in Defendants' motion, Plaintiff argues that *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603– 05 (2008) is not applicable because this is not a public employment context and otherwise inapposite. (*Id.* at 8, 9.)

A "class of one" equal protection claim requires that a plaintiff allege "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "While persons are similarly situated under the Equal Protection Clause when they

---

[8] For ease of reference, the court uses the page number in the CM/ECF header.

are alike in all relevant aspects, the law in the Third Circuit does not require the plaintiff to show that the comparators are identical in all relevant respects but only that they are alike." *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013) (cleaned up). Further, a plaintiff only needs to allege facts that plausibly show the existence of similarly situated parties. *Id.* Whether individuals are similarly situated is a fact intensive inquiry that is "inappropriate at the motion-to-dismiss stage." *Id.* (quotations omitted).

While Plaintiffs have certainly not alleged that Lamar Express Towing and Ankney Towing are identical in every aspect, they are not required to do so. Rather, Plaintiffs are required to allege they are alike in all relevant aspects, and Plaintiffs have met this burden. Plaintiffs alleged that "Mr. Lamar of Lamar Express Towing received approximately ten (10) formal violation notices before Lamar Express Towing was removed [form the tow list]." (Doc. 8, ¶ 57.) Although not detailed, it can reasonably be inferred that Lamar Towing is a towing company that was on the tow list of the York County 911 Dispatch, the same as Ankney Towing. Thus, Lamar Express Towing and Ankney Towing are similar in the respect that they were both removed from the tow list, which is the conduct at issue. There are allegations that Lamar Express was treated differently, having received at least ten formal citations before being removed, whereas Ankney Towing did not receive any formal citations but was nonetheless removed from the

list. Whether there are further relevant similarities or dissimilarities between these two entities is better explored through discovery. For the purpose of a motion to dismiss, Plaintiffs have sufficiently alleged that they were treated differently than a similarly situated comparator.

Defendants also argue that Plaintiffs have failed to plead facts showing that Defendants' actions were irrational because Plaintiffs have failed to plead anything beyond conclusory statements that Defendants were motivated by disdain for Mr. Ankney's speech impediment. (Doc. 18, p. 11.) "To succeed on a class-of-one claim, a plaintiff must show that the differential treatment was 'irrational and wholly arbitrary.'" *Tucker Industrial Liquid Coatings, Inc. v. Borough of East Berlin*, 85 F. Supp. 3d 8903, 311 (M.D. Pa. 2015) (quoting *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 286 (3d Cir. 2004)). This is a high burden, and a plaintiff fails to meet that burden when "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 508 U.S. 312, 320 (1993). Under rational basis review, a governmental classification "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* To strike the balance between the pleading standard under Rule 12(b)(6) and the heightened standard of proving a governmental classification is irrational, the court "accept[s] as true all of the complaint's allegations, including all reasonable

inferences that follow, and assesses whether they are sufficient to overcome the presumption of rationality that applies to the ordinance."[9] *Rucci v. Cranberry Twp.*, 130 Fed. App'x 572, 575 (3d Cir. 2005).

Plaintiffs have alleged that their removal from the tow list was arbitrary and without a rational basis, and that the treatment they received is different than the treatment that other similar tow truck companies on the tow list received. (Doc. 8, ¶¶ 52, 57, 59, 98.) Moreover, Plaintiffs pleaded that Northern York Regional Police had standards for the tow list, and Plaintiffs fulfilled those standards, yet they were removed from the tow list. (*Id.* ¶¶ 20–22.) Moreover, the complaint itself does not present a rational basis for Plaintiffs' removal from the tow list and Defendants do not present one. At this stage, considering the pleading standard, this is sufficient to state a claim for a class-of-one theory of an equal protection violation.

Further, Plaintiffs are not required to plead facts showing Defendants were motivated by animus for Ankney's speech impediment in order to plead that Defendants acted intentionally because "intentional discrimination' need not be motivated by 'ill will, enmity, or hostility' to contravene the Equal Protection

---

[9] While *Rucci* applied rational basis review in the context of analyzing an ordinance, courts have applied the same standard in analyzing governmental classifications in "class-of-one" cases. *Archer v. York City Sch. Dist.*, 13-CV-2826, 2014 WL 12884086 (M.D. Pa. Feb. 27, 2014).

Clause." *Hassan v. New York*, 804 F.3d 277, 298 (3d Cir. 2015) (citation omitted).

Accordingly, the motion to dismiss will be denied on this basis.[10]

## B. Count III–*Monell* Claim Regarding the Tow List

Defendants argue the accompanying *Monell* claim regarding the tow list

fails because it does not allege a policy or custom of depriving individuals' equal

protection rights or a policymaker who caused the violation. (Doc. 18, p. 13.)

Defendants also add that the *Monell* claim fails to state a claim because there is no

underlying constitutional violation. (*Id.*) Finally, Defendants argue that Ankney

cannot establish deliberate indifference because the amended complaint fails to

allege an individual with final policymaking authority was responsible for a policy

and it also does not allege a pattern of violations. (*Id.* at 14.)

Plaintiffs argue that "[a]s Plaintiffs have sufficiently pled a claim for

violations of the Equal Protection Clause, there is a reasonable expectation that

---

[10] To the extent Defendants rely on *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008), the court finds that *Engquist* is inapposite. In *Engquist*, the Supreme Court held that a "'class-of-one' theory of equal protection has no place in the public employment context." *Id.* at 594. A class-of-one theory is not available in the public employment context because employment decisions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments[,]" and "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise[]" in the employment context. *Id.* at 603. This case is not a public employment case. This case is more similar to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) in which the court first recognized a "class-of-one" theory when a municipality required plaintiff to obtain a thirty-three-foot easement, but all other neighbors only needed a fifteen-foot easement. *Id.* at 563. The court addresses this case because Plaintiffs address it in their brief in opposition. (Doc. 20, p. 8.) Defendants cited to *Engquist* in their motion to dismiss, but did not develop any argument relating to *Engquist* in their brief in support. (*See* Doc. 17, ¶ 7.)

discovery will reveal evidence of the necessary facts to demonstrate a *Monell* claim at trial."  (Doc. 20, p. 10.)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

A policy or custom can be proven in multiple ways.  First, a plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality . . . ."  *Id.* at 351.  The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action[.]"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).  Second, absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage

of which a policymaker must have been aware[,]" caused the violation of their rights. *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)).  The custom must be "so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).  Third, a "specific injury-causing action[] taken by a government official who is responsible for establishing municipal polices" may establish a municipal policy or custom. *Schlaybach*, 434 F. Supp. 3d at 351.  In this scenario, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains." *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997).

Finally, "a widespread failure by policymakers to provide adequate training or supervision to subordinates" which amounts to deliberate indifference towards the rights of citizens can also support municipal liability. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d. Cir. 2003).  In any of the above scenarios, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of policy or acquiescence in a well-settled custom." *Bielevicz*, 915 F.2d at 850.

Here, Plaintiffs have failed to allege a *Monell* claim because they have only pleaded conclusory statements regarding the police department's or townships' policies.  Plaintiffs have not specified any decisionmaker or official who promulgated a specific policy, nor have they specified a policy or custom that is so widespread that it is effectively a policy.  At most, Plaintiffs have alleged that purported policymakers, such as Neidigh, Dunham, and Doyle, participated in the purported constitutional violation.  (Doc. 8, ¶¶ 104, 105.)  However, Plaintiffs have not sufficiently pleaded facts to show that these individuals are final policymakers for the municipal entities.  Plaintiffs allege that Neidigh, Doyle, and Dunham participated in the constitutional violations and are "high-ranking within each of their organizations[.]"  (Doc. 8, ¶ 104.)  This is insufficient to allege that they are final policymakers for their respective entities because a policymaker is not necessarily a "high ranking" official, but rather, a policymaker must be responsible for making the policy of the entity.  *Schlaybach*, 434 F. Supp. 3d at 351.

Plaintiffs allege that Dunham was the final policymaker for Jackson Township because he was the township supervisor.  (*Id.* at ¶ 105.)  However, as argued by Defendants, at the time of Ankney Towing's removal from the tow list in November 2023, Dunham had not yet taken on his role of Township Supervisor and was only Township Supervisor-elect.  (*Id.* at ¶¶ 9, 46.)  Thus, there are no allegations that any individual defendant is responsible for establishing the policies

of their respective municipalities.  Therefore, Plaintiffs provide only conclusory recitation of the elements of a *Monell* claim.  Accordingly, the motion to dismiss will be granted and Count VI will be dismissed without prejudice because amendment is not futile.  *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

### C. Whether Dunham was Acting Under Color of State Law

Defendants Dunham and Jackson Township argue that the amended complaint fails to allege that Defendant Dunham, individually or as Township Supervisor of Jackson Township, was a state actor for § 1983 purposes because Dunham had not yet taken office as Jackson Township supervisor during the events at issue.  (Doc. 16, pp. 7–9.)  Plaintiffs respond that they have alleged sufficient facts showing Dunham's close nexus to removing Ankney Towing from the tow list through the temporal proximity between Dunham threatening to remove Ankney Towing from the tow list and the removal, Paradise Township initiating a lawsuit the day after the interaction with Dunham, as well as York County 911 Dispatch informing Ankney Towing that their removal from the list was because Jackson and Paradise Townships "no longer wants you on the list." (Doc. 22, p. 6.)

As explained by the Third Circuit, the Supreme Court has developed three different tests to assess whether a private person's or entity's action can be

attributable to the state. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). First, there is the "public function" test, which asks, "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state[.]" *Id.* Second, there is the "close nexus" test, which asks "whether the private party has acted with the help of or in concert with state officials[.]" *Id.* Third and finally, there is the "symbiotic relationship" test, which asks whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* The parties only make arguments regarding the close nexus test.

Dunham in his official capacity as Township Supervisor will be dismissed without prejudice because it is alleged in the amended complaint that Dunham had not yet taken that position as of the November 2023 accident response incident giving rise to the claims at issue. (Doc. 8, ¶ 46.) However, the claim against Dunham in his official capacity as fire chief will not be dismissed because Defendants do not contest the claim against Dunham in his capacity as fire chief. The claim against Dunham in his individual capacity will also not be dismissed because Plaintiffs have sufficiently alleged Dunham and Jackson Township's participation in the removal from the tow list. Although not specific, there is a suggestion of temporal proximity between Dunham's disagreement with Ankney Towing in his capacity as fire chief of a department of Jackson Township and

Ankney Towing being informed they were removed from the list at the request of Jackson and Paradise Townships. (*Id.* ¶¶ 7, 8, 54–56.) This is sufficient to allow the claim to proceed to discovery and whether it ultimately can be proven will be tested at a later time. Accordingly, the motion to dismiss is granted in part and denied in part.

### D. Count V–ADA Claim

Defendants argue that Ankney has failed to plead facts showing that his speech impediment substantially limited a major life activity, as required for an ADA claim. (Doc. 18, p. 16.) Further, Defendants argue that Ankney has failed to allege facts sufficient to show that removing Ankney from the tow list was due to Ankney's speech impediment. (*Id.*)

Plaintiffs respond that the court "can infer from the facts pled that Mr. Ankney's speech impediment substantially limits one of life's most important life activities, that ability to communicate verbally with other human beings." (Doc. 20, p. 11.) Further, Plaintiffs argue that "even if discovery fails to demonstrate a sufficient limitation, discovery may nonetheless reveal that Defendants 'regarded' Mr. Ankney as having such an impairment." (*Id.*) Finally, Plaintiffs construe Defendants' argument that the allegations regarding why Ankney was removed from the tow list are conclusory as an argument that "it is not plausible for individuals to discriminate against an individual based upon a speech impediment."

(*Id.*)  Thus, Plaintiffs argue that "it is entirely plausible that individuals will abuse their power and influence to discriminate against others on the most meaningless of bases–our Country's history is replete with such examples."  (*Id.*)  Plaintiffs point to no specific examples.

To state a claim under Title II of the ADA, a plaintiff must plead that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxel*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).  The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102(1).  A "major life activity" includes speaking.  *Id.* at § 12102(2).  Further, the ADA specifically provides that **"**[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  *Id.* § 12102(4)(A).

Here, Ankney has alleged that his lifelong speech impediment causes Ankney to have difficulty speaking clearly.  (Doc. 8, ¶ 61.)  For pleading purposes,

this is sufficient to allege a disability.  The extent of Ankney's speaking difficulties is better explored through discovery.

Further, Ankney has sufficiently alleged that the Defendants regarded him as having an impairment.  The definitions section of the ADA provides:

> [a]n individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12102(3)(A).  However, 42 U.S.C. § 12102(1)(C) "shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."  *Id.* § 12102)(3)(B).  Plaintiffs have alleged that members of Nashville Volunteer Fire company mocked Ankney and Dunham witnessed such mocking.  (Doc. 8, ¶¶ 62, 63.)  It is alleged that Nashville Volunteer Fire Company is a "department" of Jackson Township.  (*Id.* at ¶ 7.)  Further, Plaintiffs have alleged that Doyle mocked Ankney for his speech impediment.  (*Id.* at ¶ 77.)  It is also alleged that Ankney Towing was denied participation in the tow list "program" due to Ankney's speech impediment.  (*Id.* at ¶ 99, 111.)  Additionally, the impairment is not transitory or minor as Plaintiffs have alleged that Ankney has suffered from a speech impediment his whole life.  (*Id.* at ¶ 60.)  These allegations show that Defendants commented on Ankney's speech impediment and allegedly took actions against

him because of this impairment.  Taken together, these allegations are sufficient to allege Jackson Township and Paradise Township subjected Ankney to a prohibited action because of a perceived impairment, regardless of whether that impairment actually substantially limited Ankney's major life activity.  Further, the court agrees with Plaintiffs that the case cited by Defendants is inapposite as it deals with whether a Plaintiff had produced sufficient evidence to show that complications related to his epilepsy substantially limited a major life activity at the summary judgment stage.  *Sterling v. McKesson Automation, Inc.*, 2006 WL 2792203, at * 5 (W.D. Pa. Sept. 26, 2006).  A detailed examination of the extent of Ankney's speech impairment is more appropriate once the parties have conducted discovery.

Finally, Defendants argue that Ankney's allegations that he was removed from the list because of discrimination against him are conclusory.  (Doc. 18, p. 16.)  While these specific allegations are conclusory, Plaintiffs have pleaded sufficient facts to infer that the reason why Plaintiffs were removed from the tow list was because of Ankney's speech impediment, considering that Ankney Towing was removed from the tow list even though it had satisfied the requirements set forth by Lieutenant Neidigh to qualify as a towing company, never received a citation as threatened by Dunham, and Jackson Township employees and Paradise

Township officials had mocked Ankney's speech impediment.  Accordingly, the motion to dismiss regarding the ADA claim is denied.[11]

### E. Counts VI and VII–Equal Protection Claim Regarding Signage

Defendants again argue that Plaintiffs have failed to identify a similarly situated comparator for the equal protection claims regarding the signage.  (Doc. 18, p. 17.)  Further, Defendants argue that Doyle's enforcement of zoning ordinances against Plaintiffs was not arbitrary or irrational.  (*Id.*)  Regarding the *Monell* claims, Defendants argue that Plaintiffs have failed to plead any policy or custom of violating equal protection rights relating to zoning enforcement.  (*Id.*)  Defendants also note that Plaintiffs have failed to plead any policy makers from Paradise Township who violated their rights.  (*Id.* at 17, 18.)

Plaintiffs respond that "[t]here are numerous similarly situated property owners in Paradise Township.  Glaringly, the unequal treatment was so obvious that Paradise Township & Mr. Doyle withdrew the court action only after Mr. Ankney retained counsel and then only two weeks prior to the adjudication." (Doc. 20, p. 11.)  Plaintiffs argue that the court "can more than reasonably infer that there exists a (or dozens) property owner with one sign on the owner's property in Paradise Township."  (*Id.* at 12.)  Plaintiffs also argue that the court can

---

[11] As noted above, the motion is granted regarding Neidigh, Dunham, and Doyle in their individual capacities, as conceded by Plaintiffs.

infer that "there was not an ordinance violation and Mr. Doyle was instead abusing his power." (*Id.*)  Plaintiffs again argue that because they have stated a claim for an equal protection claim, their *Monell* claim should also proceed.  (*Id.*)

This claim also alleges a class-of-one equal protection claim.  *Hill*, 455 F.3d at 239.  Here, however, Plaintiffs have not identified similarly situated properties that received different treatment.  Plaintiffs ask the court to speculate that there must be other properties similarly situated that are allowed to have more than one sign on the property.  This is not an inference the court can reasonably draw from the amended complaint.  Accordingly, the motion to dismiss will be granted on this claim and count VI will be dismissed without prejudice.

Because Plaintiffs have failed to state a constitutional violation in count VI, the court will grant the motion to dismiss regarding count VII and dismiss the *Monell* claim without prejudice.  (*Knellinger v. York Street Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014) ("Importantly, without an underlying constitutional violation, there can be no *Monell* claim.")  Accordingly, Counts VI and VII are dismissed without prejudice and with leave to amend because amendment is not futile at this time.  *Fletcher-Harlee Corp.*, 482 F.3d at 252.

CONCLUSION

The motions to dismiss will be granted in part and denied in part.  An Order

follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: April 21, 2025