## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN ANKNEY, *et al.*, | : | Civil No. 1:24-CV-01654 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PARADISE TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are two motions to dismiss filed by Defendants the
Northern York County Regional Police Department, Jeremy J. Neidigh, Neal
Doyle, the Nashville Volunteer Fire Department,[1] and Bradley R. Dunham
(collectively, "Defendants").  (Docs. 42, 45.)  Defendants argue that Plaintiffs
Shawn Ankney and Ankney's Towing, Recovery & Auto Repair Service
(collectively, "Plaintiffs") fail to state a claim upon which relief can be granted in
their second amended complaint.  (Doc. 40.)  Plaintiffs allege that, by removing
and excluding Shawn Ankney and his towing company from a tow list program
because of his disabilities, Defendants violated the Equal Protection clause of the

---

[1] Defendants previously stated that Plaintiffs incorrectly identified Nashville Volunteer Fire
Company as Nashville Volunteer Fire Department in their first amended complaint, so the court
referred to that entity as the Nashville Volunteer Fire Company in its previous memorandum
opinion denying in part and granting in part several motions to dismiss.  (Doc. 34, p. 2 n.1.)
However, both Plaintiffs and Defendants refer to that entity as the Nashville Volunteer Fire
Department in the second amended complaint, motions to dismiss, and a response to the motions
to dismiss.  (Doc. 40, p. 1; Doc. 45, p. 1; Doc. 48, p. 1.)  Therefore, the court will do the same in
this memorandum opinion.

Fourteenth Amendment, U.S. Const. amend. XIV, § 1, and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134 ("Title II of the ADA").  For the reasons that follow, the motions will be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Shawn Ankney, Ankney's Towing, and the Tow List

Shawn Ankney ("Ankney") has operated his towing company, Ankney's Towing, Recovery & Auto Repair Service ("Ankney's Towing"), in Spring Grove, Pennsylvania, since 1996.  (Doc. 40, ¶¶ 2, 10–12.)  Ankney suffers from cerebral atrophy and late cortical cerebellar atrophy.  (*Id.* ¶ 14.)  Due to these conditions, Ankney has a severe speech impediment and experiences aphasia, cognitive impairment, and memory loss.  (*Id.*)  Ankney is a trained mechanic, but his disabilities prevent him from possessing a driver's license.  (*Id.* ¶¶ 19, 21.)  Thus, he cannot operate Ankney's towing on his own.  (*Id.* ¶ 20.)  Two employees help Ankney run the business, and among other responsibilities, they are tasked with driving tow trucks and operating vehicles.  (*Id.* ¶¶ 20–21.)

From 1972 to 2023, the Northern York County Regional Police Department ("Northern Regional Police Department") included Ankney's Towing on the tow list.  (*Id.* ¶¶ 31, 48.)  The tow list is a list of towing companies that the Northern Regional Police Department calls when it needs towing services.  (*Id.* ¶ 29.)  The

Northern Regional Police Department rotates which company has priority on the list, so when the Northern Regional Police Department needs towing services, York County 911 Dispatch contacts the company that has priority at that time. (*Id.*) The list is updated annually. (*Id.*) Plaintiffs allege that Jeremy J. Neidigh, who is an administrative lieutenant and employee of the Northern Regional Police Department, maintains the tow list on behalf of the department. (*Id.* ¶ 4, 33.)

### B. 2023 Tow List Removal

In November 2023, Ankney's Towing was the priority tow company on the tow list. (Doc. 40, ¶ 34.) On November 13, 2023, the Northern Regional Police Department contacted Ankney's Towing through York County 911 Dispatch and requested that a tow truck be sent to the scene of an accident in Jackson Township, Pennsylvania. (*Id.* ¶ 35.) Ankney directed Mr. Corbin, an Ankney's Towing employee, to go to the accident site and begin moving vehicles out of traffic on behalf of Ankney's Towing. (*Id.* ¶¶ 36–37.)

Bradley R. Dunham ("Dunham") was, at the time of the accident,[2] the Fire Chief of the Nashville Volunteer Fire Department ("Nashville Fire Department"). (*Id.* ¶ 38.) When Mr. Corbin arrived on the scene of the accident, Dunham approached him and "began yelling in Mr. Corbin's face" about Ankney's absence.

---

[2] Dunham was elected as a township supervisor for Jackson Township prior to this accident. (Doc. 40, ¶ 39.) But at the time of the accident, his term had not yet started. (*Id.*)

(*Id.* ¶ 40.)  Dunham then spoke to Ankney over the phone and told Ankney that he would "write up" Ankney's Towing because Mr. Corbin did not have oil-dry at the scene of the accident.  (*Id.* ¶ 41.)  Mr. Corbin told Dunham that Ankney was on his way with the oil-dry.  (*Id.*)  Dunham told Ankney that he would "write up" Ankney's towing, and said: "I'll think of something, but there will be a complaint." (*Id.* ¶ 42.)  The exchange ended when a Northern Regional Police Department officer intervened and forced Dunham to direct traffic.  (*Id.* ¶ 43.)  Instead of directing traffic, Dunham left the scene.  (*Id.* ¶ 44.)

Dunham did not "write up" Ankney's Towing, and neither Ankney, nor Mr. Corbin, nor the business received a notice of violation, complaint, or concern after the November 13, 2023 accident.  (*Id.* ¶¶ 45–46.)  But over the next several days, the Northern Regional Police Department needed towing services, and it did not contact Ankney's Towing, even though Ankney's Towing occupied the priority position on the tow list.  (*Id.* ¶¶ 34, 47.)  Ankney called York County 911 Dispatch and left a voicemail.  (*Id.* ¶ 48.)  Several days later, York County 911 Dispatch called back and told Ankney that his business was removed from the tow list because Paradise Township and Jackson Township "no longer want[ed] [Ankney and Ankney's Towing] on the list."  (*Id.*)  York County 911 Dispatch assured Ankney that the Northern Regional Police Department would still contact Ankney should it receive individual requests for Ankney's Towing.   (*Id.* ¶ 49.)

Plaintiffs allege that this was an empty assurance.  On June 23, 2024, Brandy Anderson ("Anderson"), a long-standing Ankney's Towing customer, was involved in a vehicle accident and asked a Northern Regional Police Department officer to have Ankney's Towing tow her vehicle.  (*Id.* ¶¶ 49a–b.)  The officer told Anderson that Rebound Towing purchased Ankney's Towing, and that Ankney's Towing closed.  (*Id.* ¶ 49c.)  Anderson went to Ankney's Towing's business address to retrieve her car, where she discovered that Ankney's Towing was still open and that her vehicle had been towed somewhere else.  (*Id.* ¶ 49d.)

Even if Ankney's Towing had received a "write up" or formal violation notice following the November 13, 2023 accident, Plaintiffs allege that such a violation would not justify Ankney's Towing's removal from the tow list.  (*Id.* ¶ 53.)  Plaintiffs aver that another towing business and its operator, Mr. Lamar of Lamar Express Towing, received approximately ten formal violation notices before the business was removed from the tow list.  (*Id.*)  Ankney's Towing lost significant revenue and profits because it was removed from the tow list.  (*Id.* ¶ 54.)

### C. 2024 Tow List Exclusion

Before the November 2023 accident and Ankney's Towing's removal from the tow list, Neidigh sent an email to Ankney's Towing and other towing businesses on October 11, 2023.  (Doc. 40, ¶ 55.)  The email explained the criteria

5

for inclusion on the 2024 tow list and requested information from the towing companies.  (*Id*. ¶¶ 55–56.)  Ankney provided all the information the email requested to Neidigh on time, but Ankney's Towing was absent from the 2024 tow list.  (*Id.* ¶¶ 56–57.)  Ankney's towing was, however, returned to the tow list in 2025, and Plaintiffs allege that Ankney's towing was qualified to be on the tow list at all material times.  (*Id.* ¶¶ 58–59.)

### D. Mocking Incidents

Plaintiffs allege that Dunham and Neal Doyle ("Doyle"), a deputy fire chief for the Nashville Fire Department, observed Northern Regional Police Department and Nashville Fire Department members mocking Ankney due to his speech impediment on multiple occasions while he performed his towing duties.  (Doc. 40, ¶¶ 23–24.)  They allege that Dunham joined in the mocking several times, and that Doyle participated in laughter directed at Ankney. (*Id.*)

On one occasion, while Ankney spoke to a customer at the scene of an accident, Dunham mocked Ankney by telling him to repeat himself and that no one could understand him.  (*Id.* ¶¶ 25–27.)  A Northern Regional Police Department officer approached Dunham and told him to "knock it off."  (*Id.* ¶ 28.)  Plaintiffs allege that Doyle was also present at the scene of that accident.  (*Id.* ¶ 25.)

### E. Claims in the Amended Complaint and Procedural History

Plaintiffs filed their second amended complaint on May 12, 2025, raising

one constitutional violation pursuant to 42 U.S.C. § 1983 against all Defendants

and one violation of Title II of the ADA against the Nashville Fire Department and

Northern Regional Police Department.  (Doc. 40, ¶¶ 60–70.)

In Count I, Plaintiffs allege that Defendants intentionally treated Plaintiffs

differently from similarly situated individuals and towing companies without

reasonable justification in violation of the Equal Protection clause of the

Fourteenth Amendment.  (*Id.* ¶¶ 60–65.)  They further aver that Defendants

intentionally treated Ankney differently because of Doyle and Dunham's disdain

for his disabilities.  (*Id.* ¶¶ 63–64.)  In Count II, Plaintiffs allege that the Nashville

Fire Department and the Northern Regional Police Department violated Title II of

the ADA by acting in concert to remove them from, and prevent them from

rejoining, the tow list due to Ankney's speech impediment.[3]  (*Id.* ¶¶ 66–70.)

---

[3] In two separate responses in opposition to Defendants' motions to dismiss, Plaintiffs cite the legal standard for an employment discrimination claim raised pursuant to Title I of the ADA. (Doc. 47, p. 9; Doc. 48, p. 8 (citing *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 388–89 (W.D. Pa. 2007).)  But because Plaintiffs allege that several public entities denied them access to a tow list program because of Ankney's disabilities, and because Ankney does not allege that Defendants employed him, the court construes Count II to raise a claim pursuant to Title II of the ADA, not Title I.  (Doc. 40, ¶¶ 66–70); *see Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018) ("To successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'") (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

On May 27, 2025, Neidigh and the Northern Regional Police Department filed a motion to dismiss the second amended complaint for failure to state a claim and a brief in support. (Docs. 42, 43.) On May 29, 2025, the Nashville Fire Department, alongside Dunham and Doyle in their official capacities as fire chief and deputy fire chief, respectively, moved to dismiss Plaintiffs' second amended complaint for failure to state a claim and filed a brief in support. (Docs. 45, 46.) Plaintiffs filed responses in opposition to both motions to dismiss on June 9, 2025. (Docs. 47, 48.) Defendants did not file reply briefs, so both motions are ripe for disposition.

### JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs allege a violation of a constitutional right under 42 U.S.C. § 1983 and a violation of Title II of the ADA, a federal statute. Venue is appropriate pursuant to 28 U.S.C. § 1391 because all parties are located within the Middle District of Pennsylvania and all acts or omissions alleged in the amended complaint occurred within the Middle District.

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

## DISCUSSION

Before the court considers the arguments Defendants present in their motions to dismiss, it will address the parties' apparent uncertainty regarding which Defendants Plaintiffs intend to assert an Equal Protection claim against in the second amended complaint.  (*See* Doc. 40, ¶¶ 60–65.)  Then, the court will consider the Equal Protection and Title II of the ADA claims by addressing the arguments raised by each individual Defendant in turn.

### A. Count I – Equal Protection Claim

The second amended complaint raises an Equal Protection claim against "All Defendants" based on Ankney's Towing's removal and exclusion from the tow list. (Doc. 40, p. 9.)[4] The second amended complaint names the following defendants: Northern York County Regional Police Department; Jeremy J. Neidigh, individually and in his official capacity as an administrative lieutenant for the Northern York County Regional Police Department; the Nashville Volunteer Fire Department; Bradley R. Dunham, individually and in his official capacity as fire chief for the Nashville Volunteer Fire Department; and Neal Doyle, individually and in his official capacity as a deputy fire chief for the Nashville Volunteer Fire Department. (Doc. 40, p. 1–2.) Therefore, the second amended complaint appears to raise an Equal Protection claim against each of those Defendants.

However, it is not clear whether Plaintiffs intend to assert an Equal Protection claim under Section 1983 against the Nashville Fire Department, the Northern Regional Police Department, and Dunham, Doyle, and Neidigh in both their official and individual capacities. The court addresses each category of defendant in turn.

---

[4] For ease of reference, the court uses the page numbers from the CM/ECF header.

### 1.  The Northern Regional Police Department and Nashville Fire Department

A governmental entity "cannot be liable under a theory of respondeat superior or vicarious liability." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004) (quoting *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978)).  Instead, "the plaintiff must identify a policy or custom of the [governmental] entity that caused the constitutional violation" for the governmental entity to be liable pursuant to Section 1983.  *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997)).

In its motion to dismiss, the Nashville Fire Department argues that Plaintiffs fail to state a *Monell* Equal Protection claim against it. (Doc. 46, pp. 8–9.)  In their response in opposition, Plaintiffs aver that they "did not re-assert an independent *Monell* claim for violations of the Equal Protection Clause with regards to the Tow List."  (Doc. 48, p. 7 n.2.)  Moreover, Neidigh and the Northern Regional Police Department read the second amended complaint to raise an Equal Protection claim against Neidigh, only, and not the Northern Regional Police Department.  (Doc. 43, p. 2.)  In their response in opposition to the motion to dismiss, Plaintiffs do not dispute this interpretation of the second amended complaint.  (*See* Doc. 47, pp. 1–11.)  Therefore, the Court will dismiss with prejudice Plaintiffs' Equal Protection claim against the Nashville Fire Department and the Northern Regional Police

Department and will presume that Plaintiffs intended to raise an Equal Protection claim against individual defendants Doyle, Dunham, and Neidigh only.

### 2. Doyle, Dunham, and Neidigh in Their Official Capacities

Plaintiffs' potential Equal Protection claim against the Nashville Fire Department and Northern Regional Police Department impacts their Equal Protection claims against Neidigh, Doyle, and Dunham in their official capacities. When a plaintiff sues a public official in his or her official capacity for damages pursuant to Section 1983, the suit is treated as if it were brought directly against the governmental entity of which the official is part. *McGreevy v. Stroup*, 413 F.3d 359, 369 (3d Cir. 2005) (quoting *Mitros v. Borough of Glenolden*, 170 F. Supp. 2d 504, 506 (E.D. Pa. 2001)); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985); *Rivera v. Sch. Dist. of City of York*, No. 1:22-CV-00914, 2023 WL 12087107, at *8 (M.D. Pa. Dec. 4, 2023), *report and recommendation adopted*, No. 1:22-CV-914, 2024 WL 5694667 (M.D. Pa. Jan. 5, 2024) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).)

Dunham and Doyle both move to dismiss the second amended complaint in their official capacities while Neidigh does not state whether he moves to dismiss

the second amended complaint in his official or unofficial capacity. (Doc. 43, p. 1,
Doc. 46, p. 1.)  Again, because Plaintiffs aver that they did not intend to "re-assert
an independent *Monell* claim for violations of the Equal Protection Clause with
regards to the Tow List,"[5] the court gathers that they meant to raise Count I against
the individual Defendants in their individual capacities, only.  (Doc. 48, p. 7 n.2.)
Nonetheless, Plaintiffs do not explicitly state that they intend to leave out a claim
against the individual Defendants in their official capacities.  Therefore, the court
will dismiss Plaintiffs' Equal Protection claim against Dunham, Doyle, and
Neidigh in their official capacities without prejudice.

     The arguments Doyle, Dunham, and Neidigh offer in support of dismissal of
Count I apply to their personal involvement in the alleged constitutional violations
and the legal sufficiency of Plaintiffs' Equal Protection claim.  (*See* Doc. 43, p. 7;
Doc. 46, p. 8.)  Therefore, the court will consider these arguments as they relate to
Plaintiffs' Equal Protection claim against Doyle, Dunham, and Neidigh in their
individual capacities.  The court addresses each Defendant's arguments against
Plaintiffs' Equal Protection claim in turn.

---

[5] Although Plaintiffs request "any further relief [the court] deems necessary and just, including
injunctive relief," Doc. 40, p. 11, the injunctive relief Plaintiffs seek is not apparent, especially
since they aver that Ankney's Towing returned to the tow list in 2025.  (*Id.* ¶ 58.)

### 3.  Neidigh in his Individual Capacity

Neidigh argues that Plaintiffs fail to state an Equal Protection claim against him because they do not allege that he made the decision to remove Ankney's Towing from the tow list.  (Doc. 43, pp. 7–9.)  Neidigh claims that the second amended complaint alleges that he acted as a mere administrator of the tow list with no authority to decide which businesses it would include.  (*Id.* at 8–9.)  Thus, he was not "personally responsible" for removing Plaintiffs from the list, and not sufficiently involved in the alleged constitutional violation to be named as a defendant to Plaintiffs' Equal Protection claim.  (*Id.* at 7.)  Plaintiffs respond by noting that personal involvement in an alleged constitutional violation may be shown through "personal direction or . . . actual knowledge and acquiescence," so they need not show that Neidigh possessed decision-making authority regarding the tow list to sustain their Equal Protection claim against him.  (Doc. 47, p. 7 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).)  They also allege that, based on the allegations presented in the second amended complaint, Neidigh "knew and acquiesce[d] to the removal of Ankney['s] Towing" from the tow list.  (*Id.* at 8.)

Plaintiffs attempt to state a "class of one" Equal Protection claim.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  (*See* Doc. 48, p.

7.)   To properly plead a class of one Equal Protection claim, a plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill*, 455 F.3d at 239.  In any suit brought pursuant to Section 1983, a defendant must have "personal involvement in the alleged wrongs" because "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207; *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).  Personal involvement may be shown through actual knowledge of or acquiescence to the allegedly unconstitutional conduct.  *Dooley*, 957 F.3d at 374.

Neidigh cites *Rode* in support of his argument that, because he lacked authority to decide which businesses would be included on the tow list, he was not personally involved with the alleged Equal Protection violation that occurred when Ankney's Towing was removed and excluded from the list.  (Doc. 43, p. 7 (citing *Rode*, 845 F.2d at 1207).)  But *Rode* does not require that a defendant make the affirmative decision to engage in, or order a colleague to commit, the allegedly unconstitutional conduct to be named a defendant in a Section 1983 action.  845 F.2d at 1207–09.  In *Rode*, the Third Circuit held that the plaintiff failed to state a retaliatory harassment claim against the Governor of Pennsylvania in his supervisory capacity because she did not sufficiently allege that the Governor knew of or acquiesced to the alleged harassment.  *Id.* at 1208.  That case examined

supervisory liability in the context of a Section 1983 claim; it did not evaluate whether an official acting in a purely "ministerial" role is liable for unconstitutional conduct they carry out pursuant to the alleged directions of higher-ranking decision makers. *Id.*; (Doc. 43, pp. 8–9 (asserting that Neidigh operated the tow list in a "ministerial" role and was not involved in making decisions regarding its membership).)

      *Rode* does not support Neidigh's argument, and Plaintiffs sufficiently allege his involvement because they claim that the constitutional wrong occurred when they were removed from the tow list in 2023. (Doc. 40, ¶¶ 60–65.) Their allegations lead to the reasonable inference that Neidigh, as the manager of the tow list, participated in removing Ankney's Towing from the tow list. (*See id.* ¶¶ 33, 55–59 (alleging that Neidigh manages the tow list on behalf of the Northern Regional Police Department and explaining how Neidigh emailed Ankney and other towing business owners regarding the criteria for inclusion on the 2024 tow list).) Even if another individual ordered Neidigh to remove Ankney's Towing from the tow list, Neidigh's maintenance of the tow list, as described in the complaint, leads to the reasonable inference that he personally participated in the removal of Ankney's Towing from the tow list. (*See id.* ¶ 33.) Therefore, *Rode*'s personal involvement requirement does not preclude Plaintiffs' Equal Protection claim against Neidigh.

Neidigh makes a second argument: that Plaintiffs fail to state an Equal Protection claim against him because they fail to allege that he intended to treat them differently from other similarly situated individuals by removing them from the tow list.  (Doc. 43, p. 7.)  In *Joyce Outdoor Advertising Wallscapes, LLC v. City of Scranton*, No. 3:24-CV-00791, 2024 WL 4900015, at *12 (M.D. Pa. Nov. 26, 2024), the court held that a plaintiff adequately stated a class of one Equal Protection claim by simply alleging that the defendants intentionally treated it differently from other similarly situated individuals.  Here, Plaintiffs directly allege that "Defendants intentionally treated Plaintiffs differently without any rational basis for the difference in treatment," and that Defendants "intentionally treated Plaintiffs differently due to Mr. Doyle's and Mr. Dunham's disdain for Mr. Ankney's disabilities and/or the manifestations thereof."  (Doc. 40, ¶¶ 63–64.)  Thus, Plaintiffs have sufficiently alleged that Defendants, including Neidigh, intentionally treated them differently from other similarly situated individuals.

Moreover, Plaintiffs aver that Neidigh sent Ankney and other towing business operators an email explaining the criteria for inclusion on the 2024 tow list.  (*Id.* ¶ 55.)  Even though Ankney satisfied these criteria and replied to Neidigh's email with the requested information, he was excluded from the 2024 tow list.  (*Id.* ¶¶ 56–59.)  These allegations support a reasonable inference that Neidigh intentionally omitted Ankney's Towing from the tow list.  *See Wolfe v.*

17

*City of Sunbury*, No. 4:24-CV-00251, 2024 WL 4989323, at \*14 (M.D. Pa. Dec. 5, 2024) (finding that plaintiff sufficiently alleged intentional differential treatment by city officials by outlining interactions with law enforcement that "support a plausible inference of spite among city officials which may have been communicated to the officers . . .").  Therefore, Plaintiffs sufficiently allege that Neidigh intentionally removed, and later excluded, Ankney's Towing from the tow list, and the motion to dismiss the Equal Protection claim against Neidigh in his individual capacity will be denied.

### 4.  Dunham and Doyle in Their Individual Capacities

Defendants Dunham and Doyle argue that Plaintiffs fail to state a class of one Equal Protection claim because Plaintiffs do not allege that Defendants treated Ankney's Towing differently from other, similarly situated towing businesses. (Doc. 46, pp. 7–8.)  In the second amended complaint, Plaintiffs compare themselves to Mr. Lamar and Lamar Express Towing, who received approximately ten formal violation notices before Lamar Express Towing was removed from the tow list.  (Doc. 40, ¶ 53.)  Dunham and Doyle argue that Mr. Lamar and Lamar Express Towing are insufficient comparators because Plaintiffs "assume[] that the only reason for removal from the Tow List is by accumulation of violations" and fail to account for "other possible reasons for such removal."  (Doc. 46, pp. 7–8.) In response, Plaintiffs argue that the court, in ruling on Defendants' previous

motions to dismiss, already found that Plaintiffs adequately alleged that they are similarly situated to Mr. Lamar and Lamar Express Towing. (Doc. 48, p. 8.) They also argue that, at the motion to dismiss stage, they need only prove that they are alike, not identical to, Mr. Lamar and Lamar Express Towing in all relevant aspects. (*Id.*)

To state a class of one Equal Protection claim, Plaintiffs must plead "facts sufficient to make plausible the existence of . . . similarly situated parties." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011); *Borell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013). Comparators must be alike, but not identical, in all relevant aspects to be similarly situated. *Borrell*, 955 F. Supp. 2d at 405 (quoting *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 825 (3d Cir. 2009); *Southersby Dev. Corp. v. Borough of Jefferson Hills*, 852 F. Supp. 2d 616, 628 (W.D. Pa. 2012)). For example, in *Borrell*, the court found that the plaintiff sufficiently alleged the existence of a similarly situated individual by averring that the plaintiff and her comparator were students in the same nursing program, that they both had known or perceived substance abuse problems, and that she was expelled from the program while her comparator was provided counseling and ultimately allowed to return to the program. 955 F. Supp. 2d at 405.

The second amended complaint indicates that Mr. Lamar and Lamar Express Towing are, like Plaintiffs, a towing company operator and his business, that Lamar Express Towing was placed on the same tow list as Plaintiffs, and that Lamar Express Towing was removed from the tow list after accumulating approximately ten formal violation notices while Plaintiff was removed without receiving a formal violation notice. (Doc. 40, ¶ 53.) These allegations "make plausible the existence of . . . similarly situated parties," so Plaintiffs sufficiently allege that they are like Mr. Lamar and Lamar Express Towing in all relevant aspects and are therefore similarly situated. *Perano*, 423 F. App'x at 238. "Determining whether an individual is 'similarly situated' to another individual is a case-by-case fact-intensive inquiry," and Defendants may explore other reasons for Plaintiffs' removal from the tow list apart from the accumulation of violation notices through discovery. *Borrell*, 955 F. Supp. 2d at 405 (quoting *Chan v. Cnty. of Lancaster*, No. 10-CV-03424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011)). But because Plaintiffs sufficiently allege that they are similarly situated to Mr. Lamar and Lamar Express Towing, this argument does not warrant dismissal of Plaintiffs' Equal Protection claim against Dunham and Doyle at this stage.

Next, Dunham and Doyle argue that Plaintiffs fail to allege that they participated in Ankney's Towing's removal from the tow list. (Doc. 46, p. 8.) They claim that Plaintiffs fail to allege facts supporting Dunham and Doyle's

"personal involvement in the maintenance of the Tow List. Nothing is pled to support that there was any relationship between Northern Regional Police and Dunham and Doyle showing they gave personal direction, in any way, had knowledge of, or acquiesced to Ankney's removal." (*Id.*) Like Neidigh, they cite *Rode* in support of their argument that Plaintiffs failed to plead with appropriate particularity that they were personally involved in Ankney's Towing's removal from the tow list. (*Id.* at 7 (citing *Rode*, 845 F.2d at 1207).) In response, Plaintiffs argue that the court has already determined that Plaintiffs sufficiently alleged, in their first amended complaint, that Dunham and Doyle participated in Ankney's Towing's removal from the tow list. (Doc. 48, p. 7.)

Plaintiffs must plead facts sufficient to allege that Dunham and Doyle "had personal involvement in the alleged wrongs" that gave rise to their Section 1983 claim. *Rode*, 845 F.2d at 1207. Plaintiffs allege that "[u]pon information and belief, Mr. Dunham and Mr. Doyle caused Ankney['s] Towing to be removed from the Tow List" and "[i]t is believed and therefore averred that Ankney['s] Towing was not included on the Tow List for 2024 as a result of Mr. Du[n]ham's and Mr. Doyle's actions." (Doc. 40, ¶¶ 52, 57.)

Moreover, Plaintiffs allege that they were removed from the tow list soon after Dunham confronted Mr. Corbin at the scene of the November 13, 2023 vehicle accident, told Ankney first that he would "write up" Ankney's Towing, and

21

then said "I'll think of something, but there will be a complaint."  (*Id.* ¶¶ 40–49.)
Plaintiffs also allege that both Dunham and Doyle previously witnessed or
participated alongside others mocking Ankney for his speech impediment.  (*Id.*
¶¶ 23–24.)  These allegations, especially Ankney's Towing's removal from the
2023 tow list soon after Dunham confronted Mr. Corbin and Ankney at the scene
of the November 13, 2023 accident, lead to the reasonable inference that Dunham
and Doyle participated in the alleged Equal Protection violation.

Plaintiffs sufficiently allege that they are similarly situated to Mr. Lamar and
Lamar Express Towing, and that Dunham and Doyle participated in their removal
and exclusion from the tow list at this pleading stage.  Therefore, the court will
deny the motion to dismiss Plaintiffs' Equal Protection claim against Defendants
Dunham and Doyle in their individual capacities.

## B. Count II – Title II of the ADA Claim

Both the Nashville Fire Department and the Northern Regional Police
Department move to dismiss the claim Plaintiffs bring pursuant to Title II of the
ADA.  (Doc. 43, pp. 9–12; Doc. 46, pp. 9–10.)  The court addresses each
Defendant's argument in turn.

### 1. Northern Regional Police Department

The Northern Regional Police Department argues that it "is not a proper
defendant to the ADA claim."  (Doc. 43, p. 10.)  It argues that municipal police

departments "have no distinct legal identity" apart from the municipality they

serve.  (*Id.* (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir.

1997); *Martin v. Red Lion Police Dep't*, 146 Fed App'x 558, 562 n.3 (3d Cir.

2005) (per curiam).)  Courts frequently dismiss Section 1983 claims raised against

municipal departments instead of municipalities, and Defendants argue that the

same framework should apply under Title II of the ADA.  (*Id.*)  They cite several

cases in support of this argument.  (*Id.* at 10–11 (citing *Alvarez v. City of Phila.*,

No. 23-CV-3570, 2023 WL 6520507, at *1 n.1 (E.D. Pa. Oct. 4, 2023); *Walling v.

City of Newport*, No. 2:14-cv-43, 2015 WL 5304271, at *4 (E.D. KY Sept. 9,

2015); *Coleman v. Syracuse Pol. Dep't*, 5:16-CV-00836, 2016 WL 4411339, *6

(N.D. N.Y. July 22, 2016)).)  In *Alvarez*, the court dismissed the plaintiff's

employment discrimination claims against the Philadelphia Water Department

because the water department does not "have a separate legal existence from the

city of Philadelphia."  2023 WL 6520507, at *1 n.1.  The Northern Regional Police

Department does not explain its legal status in relation to the municipalities within

its jurisdiction; it only argues that, as a police department, it lacks a unique legal

identity and cannot be sued pursuant to Title II of the ADA.  (Doc. 43, pp. 10–11.)[6]

---

[6] In a separate section of its brief in support of its motion to dismiss, however, it does note that "[a]s a matter of law, the Northern York County Regional Police Department is overseen by a regional police commission created pursuant to an intergovernmental cooperation agreement under Pennsylvania's Intergovernmental Cooperation Law."  (Doc. 43, p. 8 (citing 53 Pa. Cons. Stat. § 2303–304).)

In response, Plaintiffs argue that no separate municipality governs the Northern Regional Police Department.  (Doc. 47, p. 9.)  Instead, Plaintiffs argue that the Northern York County Regional Police Commission governs the Northern York County Regional Police Department.  (*Id.*)  Nonetheless, Plaintiffs request leave to amend their complaint to name the proper defendant to their Title II claim if the court finds that they have incorrectly named the Northern Regional Police Department.  (*Id.*)

To state a claim under Title II of the ADA, a plaintiff must plead that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxel*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n. 32 (3d Cir. 2007)). The statute defines the term "public entity" as "(A) any state or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority . . . ."  42 U.S.C. § 12131(1)(A)–(C).

In *Haberle*, the Third Circuit held that "police departments fall squarely within the statutory definition of a 'public entity.'"  885 F.3d at 179–80 (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)) (internal quotation marks

omitted).  The plaintiff in that case sued individual defendants, such as police officers, members of the local borough council, and the chief of police, as well as the borough itself, but not the police department.  *Id.* at 174.  Nonetheless, the Court's holding in *Haberle* led at least one district court in the Third Circuit to conclude that, because police departments qualify as "public entit[ies]"under Title II of the ADA, they may be sued for violations of that statute.  *Powell v. Borough of Bergenfield*, No. 23-CV-21399, 2025 WL 798810, at *2 (D.N.J. Mar. 13, 2025) (citing *Haberle*, 885 F.3d at 179–80) (recognizing that municipalities and their police departments are treated as a single legal entity in the context of Section 1983 liability, but finding that "[p]olice departments may be sued under the ADA"); *see also Beckler v. City of Fort Wayne*, No. 1:24-CV-00467, 2025 WL 1308924, at *6 n.9 (N.D. Ind. May 6, 2025) (citing *Powell*, 2025 WL 798810, at *2) ("Whether Plaintiffs can file a Title II ADA claim against the [Fort Wayne Police Department] does not appear to have been clarified by the Seventh Circuit Court of Appeals, though other federal courts' rulings have either implied a municipal police department could possibly be sued or have directly ruled in the affirmative.")

However, allowing Title II plaintiffs to sue police departments instead of their managing municipalities contradicts the longstanding recognition that, in Pennsylvania, a police department has no separate legal identity from the

municipality it serves, and therefore cannot be sued as a "person" subject to Section 1983 liability. *See Martin*, 146 F. App'x at 562 n.3; *Bush v. City of Phila. Pol. Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010). State law governs an entity's capacity to either sue or be sued when the entity is neither an individual nor a corporation. Fed. R. Civ. P. 17(b)(3). In *Shilling v. Brush*, No. 4:05 CV 871, 2005 WL 2100707, at *3–*4 (M.D. Pa. Aug. 26, 2005), the court held that under Federal Rule of Civil Procedure 17(b), a municipal police department in Pennsylvania did not qualify as an "individual, corporation, partnership, or unincorporated association," and thus did not have the capacity to "sue or be sued either as a plaintiff or as a defendant." The same analysis applies to county sheriff's departments, which are not separate legal entities from their corresponding counties. *Bernard v. Washington Cnty.*, 465 F. Supp. 2d 461, 470 (W.D. Pa. 2006); *Rivera v. Lebanon Cnty. Sheriff's Dep't*, No. 1:22-CV-01272, 2023 WL 11983862, at *3 (M.D. Pa. Jan. 20, 2023), *report and recommendation adopted*, No. 1:22-CV-01272, 2023 WL 11983684 (M.D. Pa. May 18, 2023).

The court finds that, although police departments qualify as "public entities" under Title II of the ADA, *Haberle*, 885 F.3d at 179–80, they are improper defendants to name in a Title II action, and improper defendants generally, if they

have no separate legal identity from their corresponding municipality. *See*

*Schilling*, 2005 WL 2100707, at *3.[7]

Plaintiffs do not plead facts sufficient to establish that the Northern Regional

Police Department is a unique legal entity capable of being sued. In fact, the

second amended complaint states that the Northern Regional Police Department is

"a department of a county government existing under the laws of the

Commonwealth of Pennsylvania . . . ." (Doc. 40, ¶ 3.) Plaintiffs' brief in

opposition provides no clarification on this point, and only argues that the Northern

Regional Department serves a region, not a county. (Doc. 47, p. 9.) To be clear,

the court is not concluding that Defendants are correct in their assertion that the

Northern Regional Police Department cannot be sued pursuant to Title II of the

ADA. (Doc. 43, p. 9–11.) It merely concludes that Plaintiffs have not, at the

pleading stage, provided sufficient information to determine that the Northern

Regional Police Department is a unique legal entity capable of being sued.

---

[7] This does not mean that, when members of a police department violate Title II of the ADA, plaintiffs are left without legal recourse. Plaintiffs may sue the municipality that controls the police department. *See Haberle*, 885 F.3d at 174 (explaining that Plaintiff sued, among other defendants, the Borough of Nazareth, Pennsylvania, when police officers allegedly violated Title II of the ADA.) In *Montanez v. Price*, No. 23-2669, 2025 WL 2846695, at *7 (3d Cir. Oct. 8, 2025), the Third Circuit held that the Pennsylvania Department of Corrections qualifies as "a public entity and it receives federal funds, so it is a proper defendant under . . . Title II . . . ." This holding suggests that any government entity that qualifies as a public entity under Title II is a proper defendant to a Title II claim. *See id.* However, in *Montanez*, the Court considered neither Federal Rule of Civil Procedure 17 nor Section 1983 precedent applicable to police departments. *See Shilling*, 2005 WL 2100707, at *3–*4; *Martin*, 146 F. App'x at 562 n.3.

Therefore, the court will grant Defendants' motion to dismiss the Title II claim against the Northern Regional Police Department without prejudice as amendment is not futile.[8] *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

### 2. Nashville Fire Department

The Nashville Fire Department first argues that Ankney is not a qualified individual under the ADA because he does not have a driver's license, and therefore cannot legally drive a tow truck.  (Doc. 46, pp. 9–10.)  Because Ankney cannot drive a tow truck, the Nashville Fire Department argues that he is not a qualified individual because he cannot "perform the essential functions of the employment position" either with or without reasonable accommodation.  (*Id.* (citing 42 U.S.C. § 12111(8).)  Plaintiffs argue that "there is no factual basis for Moving Defendants' assertion that the owner of the towing company must have a driver's license to maintain the entity on the Tow List," and note that Ankney's Towing had been included on the tow list for decades before it was removed in 2023.  (Doc. 48, p. 8.)

---

[8] Because the court dismisses the ADA claim for this reason, it does not reach the Northern Regional Police Department's additional argument that Plaintiffs fail to allege that the police department intentionally removed Ankney's Towing from the tow list in violation of Title II of the ADA.  (Doc. 43, pp. 11–12.)

Title II of the ADA defines the term "qualified individual with a disability" as:

> [A]n individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2); *see Haberle*, 885 F.3d at 179 n.9.  The Nashville Fire Department, however, relies on the definition of qualified individual set forth in Title I of the ADA, which prohibits discrimination on the basis of disability in an employment context.  42 U.S.C. § 12111(8); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 605 (3d Cir. 1998) ("Thus, an individual eligible to sue under Title I of the ADA must be disabled but still be able to perform his or her job duties with or without a reasonable accommodation by the employer.")

Plaintiffs allege that the Nashville Fire Department and Northern Regional Police Department unlawfully excluded Ankney from a program, offered by a public entity or entities, because of his disability, and they do not allege that Defendants employed Ankney.  (Doc. 40, ¶¶ 66–70.)  Therefore, Plaintiffs appear to bring a claim pursuant to Title II of the ADA, even though, in their responses to Defendants' motions to dismiss, they also cite the standard for an employment discrimination claim relevant to claims brought pursuant to Title I of the ADA.  (Doc. 47, p. 9; Doc. 48, p. 8.)  The Nashville Fire Department fails to explain how

Title I of the ADA's definition of qualified individual applies to Plaintiffs' Title II claim, and therefore, the Title II of the ADA claim will not be dismissed on this basis.

The Nashville Fire Department also argues that Plaintiffs fail to plead facts sufficient to establish that it had "involvement, knowledge or authority to determine the participants of the Tow List" or "took any action to have [Plaintiffs] removed from the list." (Doc. 46, p. 10.) Plaintiffs argue that "actual control of the Tow List is not a requirement to state a claim for ADA violations," and that, because they allege that the Nashville Fire and Northern Regional Police Departments "act[ed] in concert," the second amended complaint states a claim under Title II of the ADA. (Doc. 48, pp. 8–9.)

In sum, the Nashville Fire Department argues that it is not the public entity that provided a service, program, or activity from which Ankney was excluded because it does not influence which businesses are placed on the tow list. (*See* Doc. 46, p. 10.) This argument fails for two reasons. First, although Plaintiffs allege that the Northern Regional Police Department maintained the tow list, Doc. 40, ¶ 33, they also plead facts sufficient to support the inference that other entities also exercised control over the tow list. That is, when Ankney called York County 911 Dispatch and asked why his business had been removed from the tow list, the dispatcher told him that "the Townships" sought Ankney's Towing's removal. (*Id.*

¶ 48.)  Moreover, Plaintiff alleges that the Nashville Fire Department and the Northern Regional Police Department "act[ed] in concert" to remove and exclude Plaintiffs from the tow list.  (*Id.* ¶ 69.)  These allegations support the reasonable inference that multiple government entities beyond the Northern Regional Police Department exercise control over the tow list "program."  (*Id.* ¶¶ 68–69.) Therefore, Plaintiffs have sufficiently alleged that the Nashville Fire Department exercised some control over the tow list program and participated in Plaintiffs' exclusion from the list.

Second, Plaintiffs allege that Dunham and Doyle—a Nashville Fire Department fire chief and deputy fire chief, respectively—caused Ankney's Towing's removal and exclusion from the tow list because of their "disdain for Mr. Ankney's disabilities and/or the manifestations thereof."  (Doc. 40, ¶¶ 6–7, 64.) And again, they allege that "[d]efendants, acting in concert, precluded Plaintiffs from continued involvement in the tow list program operated by the Northern Regional Police due to Mr. Ankney's speech impediment."  (*Id.* ¶ 69.)  Under Title II of the ADA, public entities are vicariously liable for the actions of their employees.  *Cappel v. Aston Twp. Fire Dep't*, 693 F. Supp. 3d 467, 489 (E.D. Pa. 2023) (quoting *Waters v. Amtrak*, 456 F. Supp. 3d 666, 671 (E.D. Pa. 2020)). Therefore, because Plaintiffs allege that Dunham and Doyle discriminated against them and limited their access to the tow list program, and because Dunham and

Doyle's alleged status as fire chief and deputy fire chief lead to the reasonable inference that they are employed by the Nashville Fire Department, Plaintiffs sufficiently allege that the Nashville Fire Department participated in their removal and exclusion from the tow list program.  And so, the motion to dismiss Plaintiffs' Title II of the ADA claim against the Nashville Fire Department will be denied.

CONCLUSION

For the reasons stated herein, the motions to dismiss, Docs. 42 & 45, will be granted in part and denied in part.  An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 9, 2025